**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CARAWAY HOME, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:23-cv-09756-PKC |
| | ) | |
| v. | ) | |
| | ) | |
| SENSIO INC. D/B/A MADE BY GATHER; | ) | **JURY TRIAL** |
| WALMART, INC.; DREW BARRYMORE, | ) | **DEMANDED** |
| Defendants. | ) | |

~~FIRST~~ [PROPOSED] SECOND **AMENDED COMPLAINT**

Plaintiff Caraway Home, Inc. ("Caraway" or "Plaintiff") hereby alleges for its ~~First~~ Second

Amended Complaint against Sensio Inc. d/b/a Made by Gather ("~~Gather" or "Defendant~~MBG"),

~~maker of the "Beautiful by Drew Barrymore" kitchenware product line~~Walmart Inc. ("Walmart"),

and Drew Barrymore (each a "Defendant;" collectively "Defendants"), on personal knowledge as

to its own activities and on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement, trade dress infringement, unfair
competition, false designation of origin, trade dress dilution, and related claims.

2. Caraway has revolutionized the designer cookware market by creating an
iconic, differentiated design with mass appeal. What was once humble kitchen cookware has been
transformed into a masterpiece, blurring the lines between art and cookware and achieving
Caraway's original mission to create distinctive cookware in the design.

3. Caraway's modern, sleek cookware has won awards and accolades from major
media publications, bloggers, social media influencers, and even Oprah Winfrey. Caraway is a
consistent fixture in the press, has amassed a stronger social media following than almost all other

cookware brands, and is one of the highest rated and reviewed cookware brands on the market.

4.        Caraway's plaudits were not merely on paper – the market rewarded Caraway with unprecedented sales and success, resulting in one of the most successful product introductions for modern brands, with revenue growth at an unprecedented rate. Caraway's success is driven by marketing itself based upon its unique and distinctive design.

5.        Caraway has sought to protect its unique cookware (including its distinctive lid and handle designs), including with a portfolio of design patents and registered trade dress:



**'739 Registration (Trade Dress)**          **'647 Patent (Fig. 1)**

6.        In a transparent attempt to gain a competitive edge against Caraway, and to benefit from Caraway's trade dress and aesthetic, ~~Defendant~~ MBG copied Caraway's distinctive designs, infringing Plaintiff's trade dress and patents in the process:



~~Defendant's~~MBG's **Dutch Oven**

7.        Plaintiff has thus been forced to file this action to vindicate its rights.

## PARTIES

2

8.        Plaintiff is a Delaware corporation with a place of business at 147 W. 26th Street Floor 4, New York, New York 10001. Plaintiff designs, manufactures and sells cookware and related items.

9.        Upon information and belief, Defendant Sensio Inc. d/b/a Made by Gather ("MBG") is a Delaware corporation with a principal place of business at 261 Madison Avenue, 25th Floor, New York, New York 10016-2303.

10.        Upon information and belief, Gather MBG is the owner and manufacturer of the Beautiful by Drew Barrymore kitchenware product line offered for sale through Walmart and other retailers.[1]

11.        Upon further information and belief, famous actor Drew Barrymore is the spokesperson of the "Beautiful by Drew Barrymore" brand.

12.        Upon information and belief, defendant Walmart Inc. ("Walmart") is a Delaware corporation having a principal place of business in Bentonville, Arkansas, and a regular and established places of business in New York and within this District, including in Suffern, NY, Mohegan Lake, NY, and Monroe, NY. Walmart also ships goods, including the Infringing Products, to customers in this District.

11.13.        Upon information and belief, defendant Drew Barrymore is an individual residing in New York, NY.

**JURISDICTION AND VENUE**

12.14.        This action arises under 35 U.S.C. § 100 *et seq.*, 15 U.S.C. § 1051 *et seq.*, and the laws of the State of New York.

---

[1]        https://www.walmart.com/ip/Beautiful-12pc-Cookware-Set-White-Icing-by-Drew-Barrymore/1821551567 (last accessed January 16, 2024).

3

13.15.    Subject matter jurisdiction over the claims is conferred upon this Court by 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 28 U.S.C. § 1338(a)-(b).

16.    This Court has personal jurisdiction over Defendant MBG because, upon information and belief, Defendant MBG maintains continuous and systematic contacts within New York, maintains retail stores, warehouses and/or distribution centers within this state, derives substantial revenue from the state, and/or has committed acts giving rise to this action within New York and within this District.

17.    This Court has personal jurisdiction over Walmart because, upon information and belief, Walmart maintains continuous and systematic contacts within New York, maintains retail stores, warehouses and/or distribution centers within this state, derives substantial revenue from the state, ships the Infringing Products into the State of New York, and/or has committed acts giving rise to this action within New York and within this District.

14.18.    This Court has personal jurisdiction over Drew Barrymore because, upon information and belief, Ms. Barrymore maintains continuous and systematic contacts within New York, resides within this state, derives substantial revenue from the state, and/or has committed acts giving rise to this action within New York and within this District.

15.19.    The exercise of personal jurisdiction comports with each Defendant's right to due process, because each Defendant has purposefully availed itself of the privilege of conducting activities within this District, such that each Defendant should reasonably anticipate being haled into court here.

16.20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), and 28 U.S.C. § 1400, at least because Plaintiff resides within this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

*Plaintiff's Brand Recognition and Accolades*

~~17.~~21.    Plaintiff has quickly become one of the most well-known, admired, and respected modern consumer brands, and has become the face of a new generation of cookware. Since November 2019, over one thousand unsolicited mainstream news articles have discussed Caraway.

~~18.~~22.    This media coverage has been overwhelming, with well-known and respected media outlets highlighting the quality, design, and (above all) unique aesthetic of Caraway's cookware in unsolicited articles and other forms of media coverage.

~~19.~~23.    For example, GOOD HOUSEKEEPING ranked Caraway's cookware set the most stylish ceramic cookware set of 2020 that "come[s] in an array of eye-catching colors…designed to be displayed" and noting that Caraway's cookware is "pretty enough to leave out on your stovetop when they're not in use." *See* <u>Exhibit A</u> (enclosed).

~~20.~~24.    HUNKER raves about the uniqueness and beauty of Caraway's design: "have you ever seen a more beautiful set of ceramic pots and pans?… Not only does it come in a unique hue, but the handles are also super sleek." <u>Exhibit B</u>.

~~21.~~25.    DEPARTURES wrote about Caraway's "cult following," TRAVEL AND LEISURE stated that Caraway has become a "household name," APARTMENT THERAPY has talked about Caraway's "loyal fanbase," and REAL SIMPLE wrote about a new color Caraway launched "based on the popularity of Caraway…they're bound to sell quickly."

~~22.~~26.    Oprah Winfrey has named Caraway's cookware on her "Entertaining *O* List," a nationally-followed, highly coveted, monthly curated list of only a handful of items that "we think are just great."  Oprah emphasized that Caraway's "fabulously sophisticated colors . . . mean they are gorgeous." <u>Exhibit C</u>.

23.27.    POPSUGAR's unsolicited Jul. 12, 2022 article entitled "I Tried the Internet-Famous Caraway Cookware Set, and I Can Confirm It's Worth the Hype" enthuses "[d]id I mention how pretty this cookware is? I feel comfortable leaving it out on the stove because of its Instagram-worthy design." Exhibit D.

24.28.    In an unsolicited Sep. 29, 2020 article, HUFFPOST emphasized that they could not get enough of Caraway's cookware. *See* Exhibit E ("we picked out the prettiest pastel cookware we could find on the internet"). An unsolicited Dec. 9, 2020 DAILY BEAST article echoed this, adding that Caraway's cookware is "a statement piece to say the least…they are poppy yet well-designed, and you have the choice of six [colors], which might just be the most difficult decision you've made in a while." Exhibit F.

25.29.    In an unsolicited Nov. 26, 2021 article, REVIEWED.COM compares Caraway cookware to the beauty of an Apple iPhone: "Caraway gives you an immediate high-quality impression, much like the one you get when you open a new iPhone. The pieces themselves are heavyweight, sleek, attractive with beautiful gleaming stainless-steel handles." Exhibit G. While renowned interior designer Kelly Wearstler stated that Caraway is "a true game changer, and the pieces come coated in stylish color options." *See* Exhibit H.

30.    According to an unsolicited Nov. 5, 2019 article in REFINERY29, "Sexy and cookware aren't terms we're apt to pair, but a new brand [Caraway] just seamlessly melded the two together in a majorly accessible way…The ceramic goods are available in five separate color options that aren't commonly seen across the current cookware scene…making kitchen clutter look like chic décor." Exhibit I.

31.    In an unsolicited April 29, 2021 article, VOGUE highlighted the design of Caraway's cookware as being "pretty enough to show off on your kitchen's open shelving[.]"

(https://www.vogue.com/article/best-cookware-sets-pots-pans).

~~26.~~32.    These articles are provided by way of example only, as the distinctive design of Caraway's cookware has been highlighted in hundreds of other unsolicited articles published in major media publications and outlets prior September 2022.

~~27.~~33.    Caraway has achieved INC.'s "Best In Business" Award for 2020 as one of only three companies in the Consumer Products category, alongside Allbirds and Bombas.

~~28.~~34.    Caraway was able to achieve such recognition due to its jaw-dropping and unique aesthetic and design. Indeed, Caraway's website has logged over 30 million browsing sessions since 2019, and Caraway has received over *one billion* impressions on social media.

~~29.~~35.    According to Google Trends, the term "Caraway Cookware" is searched more frequently than popular household brands like "Le Creuset Cookware," "Williams Sonoma Cookware," "Rachael Ray Cookware," and "All Clad Cookware."

~~30.~~36.    For example, while "Caraway Cookware" is searched approximately 90,500 times per month, competing cookware brands (such as ~~Defendant~~MBG) amount to only around 7% of that (6,600 times per month). There are more monthly Google searches for "Caraway Cookware" than entire categories of cookware, such as "non stick cookware" and "ceramic cookware" as well as the term "cookware" itself.

~~31.~~37.    Caraway cookware has received over *fifty thousand* 5-star reviews, making it one of the most highly reviewed cookware brands.

~~32.~~38.    Recognizing Caraway's distinctive and famous designs, many national retailers have awarded Caraway distribution programs. Caraway's products are sold nationally through recognized retailers including Target, Bloomingdales, Macys, Crate & Barrel, Nordstrom, The Container Store, Costco, Anthropologie, The Home Depot, Zola, and others.

***Plaintiff's Trade Dress***

33.39.    Caraway's unique design is made up of distinctive, non-functional, aesthetic features that together comprise its unique cookware design. Through continued use and extensive media coverage (as referenced above), Caraway's cookware designs have become well-known indicators of the origin and quality of Caraway's cookware products.

34.40.    Caraway offers for sale its Cookware Set (and individual cookware pieces), including as shown below:



**Plaintiff's Cookware Set**

35.41.    The Cookware Set and individual cookware pieces are currently made up of various components, including a Fry Pan, Sauce Pan with Lid, Sauté Pan with Lid, and Dutch Oven with Lid, each incorporating unique, distinctive design features, as set forth below.

36.42.    Caraway has enjoyed significant sales of its Cookware Set (and individual cookware pieces) throughout the United States, and in New York state. Though its sales are confidential, Caraway's growth rate, and absolute revenue, rival those of the most successful

direct-to-consumer brands in their early years, including Casper, Warby Parker, Away Luggage, Hims+Hers, and Allbirds. As of August 2022, Caraway's Cookware set (and individual cookware pieces), which embodies Caraway's trade dress (as described in greater detail below), had generated no less than approximately $125,000,000.00 in sales.

43.        Caraway has invested significantly in the design, development, manufacture, and marketing of its cookware. For example, as of August 2022, Caraway had invested no less than approximately $60,000,000.00 in marketing and advertising expenditures related to its Cookware set (and individual cookware pieces), which embodies Caraway's trade dress. Caraway's success has been driven in large part by Caraway's painstaking curation and investment in its groundbreaking cookware design.

37.44.    Recognizing the distinctiveness in Caraway's famous cookware designs, various competitors have attempted to plagiarize Caraway's trade dress, including MBG, Pattern Brands Inc. ("Equal Parts"), and others, forcing Caraway to take action to enforce its rights.

38.45.    Caraway's Cookware Sets (and individual cookware pieces) incorporate numerous distinctive and non-functional design features that identify, to consumers, that the Cookware and its components are made by Caraway.

39.46.    As a result of at least its continuous and exclusive use of these designs, as well as its marketing, advertising, sales, and media coverage, Caraway has acquired secondary meaning in its designs, and also owns trade dress rights in the designs and appearance of its Cookware Sets (and individual cookware pieces), each of which consumers know to be uniquely associated with Caraway.

40.47.    Through that extensive and continuous useIn view of the above – including extensive unsolicited media coverage, yearslong exclusive use of the trade dress, significant

advertising expenditures, sales success, and attempts to plagiarize Caraway's iconic designs – , Caraway's trade dress (as defined below) has become a well-known indicator of the origin and quality of Caraway's cookware products and has also acquired substantial secondary meaning in the marketplace by no later than August 2022.

<u>Caraway's Lid Trade Dress</u>

~~41.~~48.    Caraway's Sauce Pan, Sauté Pan, and Dutch Oven include unique lids (as indicated by the green brackets, below).



**Lid (Sauce Pan)**            **Lid (Sauté Pan)**            **Lid (Dutch Oven)**

~~42.~~49.    The trade dress that Caraway uses to identify itself as the exclusive source of the Sauce Pan, Sauté Pan, and Dutch Oven consists of the unique combination of: (a) a flat, circular, opaque lid, (b) an inverted, elongated U-shaped metallic handle positioned above the lid, (c) both sides of the handle having a smooth, flat surface, (d) with both ends of the handle being rounded and extending parallel to the surface of the lid at the points at which they meet the lid.

~~43.~~50.    Caraway also uses the Lid Trade Dress (consisting of the unique combination of elements listed in the preceding paragraph) in further combination with a gold and white color

10

scheme (as illustrated above) and a gold and black color scheme (as shown below).



44.51.    Caraway's White and Gold Lid Trade Dress and Black and Gold Lid Trade Dress further identify Caraway as the exclusive source of its products and constitute independent instances of protectable trade dress.

45.52.    Caraway's lids are distinctive due to their radical departure from conventional lid designs. Conventional pot/pan lids, such as the one shown below, are formed with a domed top.

46.53.    In contrast, Caraway's lids are flat.  This flatness causes a unique, pancake/disc shape, as shown above. Conventional lids are domed to allow condensation to slide off and to the side, not on the hand of a user.



47.54.    Caraway's trade dress, as embodied in its lids, is non-functional. Glass lids are often preferable, enabling a user to see the contents of the pot and pan (e.g., food or boiling water). Caraway's opaque lids preclude such functionality.

48.55.    Conventional lids are domed, to further enable condensation to roll to the sides,

preventing burning of a hand in the middle. Caraway's flat lids do not provide that functionality.

49.56.    Additionally, Caraway's metallic handle often retains heat and results in a gripping portion of the handle that is closer to the pan lid as compared to traditional cookware (as described in greater detail below), making it non-ideal to grab and hold while being used.

50.57.    Caraway's lid design is therefore non-functional.

51.58.    Accordingly, each of Caraway's Lid Trade Dress, White and Gold Lid Trade Dress, and Black and Gold Lid Trade Dress (as described above) are arbitrary, unique, aesthetic, and not functional.

Caraway's Side/Front Handle Trade Dress

52.59.    Caraway's Sauté Pan and Dutch Oven include one or more unique side and front handles (as indicated by the green arrows, below).



**Side Handles (Dutch Oven)**    **Side Handles (Dutch Oven)**    **Front Handle (Sauté Pan)**
                                 **(Overhead View)**

53.60.    The trade dress that Caraway uses to identify itself as the exclusive source of the Sauté Pan and Dutch Oven consists of the unique combination of: (a) one or more elongated U-shaped metallic handles (b) positioned on an external wall of a circular, opaque pan or pot, (c) with both sides of the handle having a smooth, flat surface, and (d) both ends of the handle extending parallel to the external wall of the pan or pot at the points at which they meet the wall.

54.61.    Caraway also uses the Side/Front Handle Trade Dress (consisting of the unique combination of elements listed in the preceding paragraph) in further combination with a gold and

white color scheme and a gold and black color scheme.

55.62.    Caraway's White and Gold Side/Front Handle Trade Dress and Black and Gold Side/Front Handle Trade Dress further identify Caraway as the exclusive source of its products and constitute independent instances of protectable trade dress.

56.63.    Caraway's side and front handles are distinctive due to their radical departure from existing handle designs. Conventional pot/pan handles (such as shown below) are formed of or otherwise include plastic, such as nylon.



57.64.    Caraway's trade dress, as embodied in its side and front handles, is non-functional. Caraway's metallic side and front handles often retain heat, making them non-ideal to grab and hold while being used.

58.65.    Caraway's elongated U-shaped handle further results in a gripping portion of the handle that is closer to the pot or pan as compared to traditional cookware. Due to the reduced space between the pot/pan body and handle, the handle itself can get hotter and retain more heat, requiring greater care when handling.

59.66.    Caraway's side/front handle design is therefore non-functional.

60.67.    Accordingly, each of Caraway's Side/Front Handle Trade Dress, White and Gold Side/Front Handle Trade Dress, and Black and Gold Side/Front Handle Trade Dress (as described above) are arbitrary, unique, aesthetic, and not functional.

<u>Caraway's Lid Handle Trade Dress</u>

~~61.~~68.    Caraway's Sauce Pan, Sauté Pan, and Dutch Oven include unique lid handles (as indicated by the green arrows, below).



**Lid Handle (Sauce Pan)**    **Lid Handle (Sauté Pan)**    **Lid Handle (Dutch Oven)**

~~62.~~69.    The trade dress that Caraway uses to identify itself as the exclusive source of the Sauce Pan, Sauté Pan, and Dutch Oven consists of the unique combination of: (a) an inverted, elongated U-shaped metallic handle positioned above a lid, (b) both sides of the handle having a smooth, flat surface,  (c) with both ends of the handle being rounded and extending parallel to the surface of the lid at the points at which they meet the lid.

~~63.~~70.    Caraway also uses the Lid Handle Trade Dress (consisting of the unique combination of elements listed in the preceding paragraph) in further combination with a gold and white color scheme and a gold and black color scheme.

~~64.~~71.    Caraway's White and Gold Lid Handle Trade Dress and Black and Gold Lid Handle Trade Dress further identify Caraway as the exclusive source of its products and constitute independent instances of protectable trade dress.

~~65.~~72.    Caraway's lid handles are distinctive due to their radical departure from existing handle designs. Conventional lid handles (such as shown below) are formed of or otherwise

include plastic, such as nylon.



66.73.    Caraway's trade dress, as embodied in its lid handles, is non-functional. Caraway's metallic lid handle often retains heat, making it non-ideal to grab and hold while being used.

67.74.    Caraway's inverted, elongated U-shaped lid handle further results in a gripping portion of the handle that is closer to the pan lid as compared to traditional cookware. Due to the reduced space between the pan lid and handle, the handle itself can get hotter and retain more heat, requiring greater care when handling.

68.75.    Therefore, Caraway's lid handle design is not functional.

69.76.    Accordingly, each of Caraway's Lid Handle Trade Dress, White and Gold Lid Handle Trade Dress, and Black and Gold Lid Handle Trade Dress (as described above) are arbitrary, unique, aesthetic, and not functional.

Caraway's Sauté Pan Trade Dress

70.77.    Caraway's Sauté Pan is shown below.



**Sauté Pan**

71.78.    The trade dress that Caraway uses to identify itself as the exclusive source of the Sauté Pan consists of the unique combination of: (a) an elongated U-shaped metallic handle (b) positioned on an external wall of a circular, opaque pan or pot, (c) with both sides of the U-shaped handle having a smooth, flat surface, and (d) both ends of the handle extending parallel to the external wall of the pan or pot at the points at which they meet the wall, and (e) an elongated metallic side handle (f) having a distal hole and (g) being positioned on an external wall of the circular opaque pan or pot opposite the U-shaped handle.

72.79.    Caraway also uses the Sauté Pan Trade Dress (consisting of the unique combination of elements listed in the preceding paragraph) in further combination with a gold and white color scheme and a gold and black color scheme.

73.80.    Caraway's White and Gold Sauté Pan Trade Dress and Black and Gold Sauté Pan Trade Dress further identify Caraway as the exclusive source of its products and constitute independent instances of protectable trade dress.

74.81.    Caraway's sauté pan design is not functional, including for the reasons outlined above with respect to Caraway's side/front handle design.

75.82.    Accordingly, each of Caraway's Sauté Pan Trade Dress, White and Gold Sauté

16

Pan Trade Dress, and Black and Gold Sauté Pan Trade Dress (as described above) are arbitrary, unique, aesthetic, and not functional.

76.83.    Caraway also owns four federal registrations for its trade dress: U.S. Registration Nos. 7,095,737 (Exhibit J), 7,095,738 (Exhibit K), 7,095,739 (Exhibit L), and 7,095,740 (Exhibit M) (collectively, "Plaintiff's Registrations").

The '737 Registered Trade Dress

77.84.    As shown below, Plaintiff's U.S. Registration No. 7,095,737 protects "a three-dimensional configuration of a sauté pan with a pan handle featuring a distal hole and a space formed between the handle and pan, an exterior handle, a pan lid featuring a hole and a pan lid handle.[]" as such elements are expressed and uniquely arranged in combination with one another in the manner depicted in the drawings reproduced below. Ex. J. "The broken lines depicting the bottom edges of the pan lid and the bottom and sides of the pan show the position of the mark on the goods and are not part of the mark. The shading lines emphasize the three-dimensional nature of the mark but are not claimed as features of the mark." *Id.*



**Reg. No. 7,095,737**

The '738 Registered Trade Dress

78.85.    As shown below, Plaintiff's U.S. Registration No. 7,095,738 protects "a three-dimensional configuration of a fry pan with a pan handle featuring a distal hole and a space formed between the handle and pan and a pan lid featuring a hole and a pan lid handle.[]" as such elements are expressed and uniquely arranged in combination with one another in the manner depicted in the drawings reproduced below. Ex. K. "The broken lines depicting the bottom edges of the pan

lid and the bottom and sides of the pan show the position of the mark on the goods and are not part of the mark. The shading lines emphasize the three-dimensional nature of the mark but are not claimed as features of the mark." *Id*.



**Reg. No. 7,095,738**

The '739 Registered Trade Dress

~~79.~~86.      ~~As shown below,~~Plaintiff's U.S. Registration No. 7,095,739 protects "a three-dimensional configuration of a Dutch oven with a rounded design and two U-shaped handles and a Dutch oven lid featuring a hole, a lie-flat lid shape, and a U-shaped handle.[]" as such elements are expressed and uniquely arranged in combination with one another in the manner depicted in the drawings reproduced below. Ex. L. "The broken lines depicting the bottom edges of the lid and the bottom and sides of the Dutch oven show the position of the mark on the goods and are not part of the mark. The shading lines emphasize the three-dimensional nature of the mark but are not claimed as features of the mark." *Id*.



**Reg. No. 7,095,739**

The '740 Registered Trade Dress

~~80.~~87.      ~~As shown below,~~Plaintiff's U.S. Registration No. 7,095,740 protects "a three-dimensional configuration of a sauce pan with a pan handle featuring a distal hole and a semicircular shape formed between the handle and the pan, a sauce pan lid featuring a hole, a lie-

flat lid shape, and a U-shaped handle.[]" as such elements are expressed and uniquely arranged in combination with one another in the manner depicted in the drawings reproduced below. Ex. M. "The broken lines depicting the bottom edges of the pan lid and the bottom and sides of the pan show the position of the mark on the goods and are not part of the mark. The shading lines emphasize the three-dimensional nature of the mark but are not claimed as features of the mark." *Id*.



**Reg. No. 7,095,740**

***Plaintiff's Patents***

81.88.    Caraway has also protected aspects of its distinctive design with multiple design patents including US Patent No. D917,226 (the "'226 Patent"), US Patent No. D953,102 (the "'102 Patent"), US Patent No. D921,421 (the "'421 Patent"), and US Patent No. D918,647 (the "'647 Patent").

The '226 Patent

82.89.    US Patent No. D917,226 (entitled "Cookware Lid Handle") is directed to "the ornamental design for a cookware lid handle," including as shown below.



**'226 Patent (Fig. 1)**

The '102 Patent

83.90.    US Patent No. D953,102 (entitled "Cookware Lid") is directed to "the ornamental design for a cookware lid," including as shown below.



**'102 Patent (Fig. 1)**

The '421 Patent

84.91.    US Patent No. D921,421 (entitled "Cookware Lid") is directed to "the ornamental design for a cookware lid," including as shown below.



**'421 Patent (Fig. 1) (top view)**          **'421 Patent (Fig. 2) (bottom view)**

The '647 Patent

85.92.    US Patent No. D918,647 (entitled "Cookware Side Handle") is directed to "the

ornamental design for a cookware side handle," including as shown below.



**'647 Patent (Fig. 1)**

*~~Defendant's~~ MBG's Infringing Activities*

~~86.~~93.    ~~Defendant~~ MBG advertises, offers for sale, and sells products including sauté pans, sauce pans, Dutch ovens, fry pans, its "Beautiful 12pc Ceramic Non-Stick Cookware Set" (which includes a sauté pan, sauce pan, Dutch oven, and fry pan) (collectively, the "Infringing Products"), including on Walmart's online storefront and in physical Walmart retail locations. Attached as <u>Exhibit N</u> is a screenshot of a listing of MBG~~Defendant~~'s Infringing Products on Walmart's website.

~~87.~~94.    Before selling the Infringing Products, MBG ~~Defendant~~ sold its "Beautiful 10 PC Cookware Set" as shown below:



~~**Defendant's**~~**MBG's Former Product Line**

~~88.~~95.     Upon information and belief, MBG ~~Defendant~~ discontinued the above cookware line because of its underwhelming sales performance.

~~89.~~96.     In an effort to improve its sales, MBG ~~Defendant~~ adopted a new strategy: replicating Caraway's distinctive designs, which already achieved significant market recognition and success.

~~90.~~97.     After recognizing Caraway's success, MBG ~~Defendant~~ redesigned its own products to incorporate Caraway's distinctive aesthetic features, including each of those outlined above.

~~91.~~98.     In marketing the Infringing Products, MBG ~~Defendant~~ brazenly flaunted its Infringing Products as having a "[s]leek design with gold die-cast handles" and "[f]lat die-cast lids for cohesive look and cooking control;" features MBG ~~Defendant~~ copied from Caraway.[2]

~~92.~~99.     Due to ~~Defendant's~~ MBG's blatant and willful copying and infringement, Plaintiff suffered harm in the form of lost sales of potential customers and the value of its brand

---

[2]     Further evidence of MBG ~~Defendant~~'s intent to copy Caraway's distinctive design and branding can be seen in MBG ~~Defendant~~'s website. As shown below, MBG ~~Defendant~~'s site utilizes multiple design elements (including distinctive fonts, menus, and button shapes) arranged in a manner that closely parallels Plaintiff's website:





**Plaintiff's Website**                              **Defendant's Website**

was significantly diminished due to the lower cost and quality of the Infringing Products.

93.100.    Upon information and belief, ~~Defendant~~MBG willfully copied the design of Plaintiff's cookware, despite Plaintiff's trade dress and patent rights, as set forth herein.

94.101.    MBG ~~Defendant~~ has purposefully advertised, promoted, manufactured, imported, offered for sale, sold, distributed, and continues to advertise, promote, manufacture, import, offer for sale, sell, and distribute cookware (including the Infringing Products) that violates Caraway's rights, including those protected by Caraway's trade dress and patent rights.

95.102.    MBG~~Defendant~~'s Infringing Products are confusingly similar imitations of Caraway's cookware and are offered to the same consumers in substantially the same form.

96.103.    MBG~~Defendant~~'s actions have been without the authorization of Caraway.

97.104.    Examples of MBG~~Defendant~~'s Infringing Products are shown below.

MBG~~Defendant~~'s Infringement of Caraway's Lid Trade Dress

98.105.    For example, MBG ~~Defendant~~ sells a sauce pan, sauté pan, and Dutch oven, each of which include lids that infringe Caraway's Lid Trade Dress (as indicated by the red brackets, below).



~~Defendant's~~ **MBG's Lid (Sauce Pan)**          **Lid (Sauté Pan)**          **Lid (Dutch Oven)**

99.106.    As shown below, the lids of MBG~~Defendant~~'s sauce pan, sauté pan, and Dutch oven each include Caraway's unique combination of: **(a)** flat, circular, opaque lid, **(b)** an inverted, elongated U-shaped metallic handle positioned above the lid, **(c)** both sides of the handle having a

smooth, flat surface, **(d)** with both ends of the handle being rounded and extending parallel to the surface of the lid at the points at which they meet the lid.



100.107.   The trade dress that MBGDefendant uses for the lids of its products (including

its sauce pan, sauté pan, and Dutch oven) renders ~~Defendant~~MBG's products nearly identical and confusingly similar to the distinctive lids of Plaintiff's sauce pan, sauté pan, and Dutch oven.

~~101.~~108.    Because MBG~~Defendant~~'s products (including its sauce pan, sauté pan, and Dutch oven) include each element of Plaintiff's trade dress – and arrange each element in the same combination as in Plaintiff's trade dress – they infringe Plaintiff's trade dress.

~~102.~~109.    Additionally, because ~~Defendant~~MBG's products (including its sauce pan, sauté pan, and Dutch oven) include the unique combination of elements that make up Caraway's Lid Trade Dress in further combination with a gold and white color scheme (as shown above) and a gold and black color scheme (as shown below), ~~Defendant's~~MBG's products further infringe Caraway's White and Gold Lid Handle Trade Dress and Black and Gold Lid Handle Trade Dress.



**~~Defendant's~~MBG's products (black and gold color scheme)**

~~Defendant's~~MBG's Infringement of Caraway's Side/Front Handle Trade Dress

~~103.~~110.    ~~Defendant~~MBG also sells pots and pans (including its Dutch oven and sauté pan) that include side and front handles that infringe Caraway's side/front handle trade dress (as

indicated by the red arrows, below).



~~Defendant's~~MBG's **Side Handles**          **Side Handles (Dutch Oven)**          **Front Handle (Sauté Pan)**
**(Dutch Oven)**                              **(Overhead View)**

~~104.~~111.   As shown below, the side and front handles of ~~Defendant's~~MBG's products (including its Dutch oven and sauté pan) include Caraway's unique combination of: **(a)** one or more elongated U-shaped metallic handles **(b)** positioned on an external wall of a circular, opaque pan or pot, **(c)** with both sides of the handle having a smooth, flat surface, and **(d)** both ends of the handle extending parallel to the external wall of the pan or pot at the points at which they meet the wall.



| Caraway | element | ~~Defendant~~MBG |
|---------|---------|------------------|
| Side Handles (Dutch Oven) | (a) (b) (c) (d) | Side Handles (Dutch Oven) |



Side Handles (Dutch Oven) (overhead)          Side Handles (Dutch Oven) (overhead)

Front Handle (Sauté Pan)          Front Handle (Sauté Pan)

105.112.   The trade dress that ~~Defendant~~MBG uses for the front/side handles of its

products (including its sauté pan and Dutch oven) renders ~~Defendant's~~MBG's products nearly

identical and confusingly similar to the distinctive front/side handles of Plaintiff's sauté pan and

Dutch oven.

106.113.   Because ~~Defendant's~~MBG's products (including its sauté pan and Dutch oven)

include each element of Plaintiff's trade dress – and arrange each element in the same combination

as in Plaintiff's trade dress – they infringe Plaintiff's trade dress.

107.114.   Additionally, because ~~Defendant's~~MBG's products (including its sauté pan and

Dutch oven) include the unique combination of elements that make up Caraway's Side/Front

Handle Trade Dress in further combination with a gold and white color scheme and a gold and

black color scheme, ~~Defendant's~~MBG's products further infringe Caraway's White and Gold Side/Front Handle Trade Dress and Black and Gold Side/Front Handle Trade Dress.

~~Defendant's~~MBG's Infringement of Caraway's Lid Handle Trade Dress

~~108.~~115.    ~~Defendant~~MBG also sells pots and pans (including its sauce pan, sauté pan, and Dutch oven) that include lid handles that infringe Caraway's Lid Handle Trade Dress (as indicated by the red arrows, below).



| ~~Defendant's~~MBG's Lid Handle (Sauce Pan) | Lid Handle (Sauté Pan) | Lid Handle (Dutch Oven) |

~~109.~~116.    As shown below, the lid handles of ~~Defendant's~~MBG's products (including their sauce pan, sauté pan, and Dutch oven) include Caraway's unique combination of: **(a)** an inverted, elongated U-shaped metallic handle positioned above a lid, **(b)** both sides of the handle having a smooth, flat surface,  **(c)** with both ends of the handle being rounded and extending parallel to the surface of the lid at the points at which they meet the lid.





110.117.   The trade dress that ~~Defendant~~MBG uses for the lid handles of its products (including its sauce pan, sauté pan, and Dutch oven) renders ~~Defendant's~~MBG's products nearly identical and confusingly similar to the distinctive lid handles of Plaintiff's sauce pan, sauté pan, and Dutch oven.

111.118.   Because ~~Defendant's~~MBG's products (including its sauce pan, sauté pan, and Dutch oven) include each element of Plaintiff's trade dress – and arrange each element in the same combination as in Plaintiff's trade dress – they infringe Plaintiff's trade dress.

112.119.   Additionally, because ~~Defendant's~~MBG's products (including its sauce pan, sauté pan, and Dutch oven) include the unique combination of elements that make up Caraway's Lid Handle Trade Dress in further combination with a gold and white color scheme and a gold and

black color scheme, ~~Defendant's~~MBG's products further infringe Caraway's White and Gold Lid

Handle Trade Dress and Black and Gold Lid Handle Trade Dress.

~~Defendant's~~MBG's Infringement of Caraway's Sauté Pan Trade Dress

~~113.~~120.    ~~Defendant~~MBG also sells pans (including as shown below) that infringe

Caraway's Sauté Pan Trade Dress.



~~Defendant's~~**MBG's** **Sauté Pan**

~~114.~~121.    As shown below, ~~Defendant's~~MBG's sauté pan includes Caraway's unique

combination of: **(a)** an elongated U-shaped metallic handle **(b)** positioned on an external wall of a

circular, opaque pan or pot, **(c)** with both sides of the U-shaped handle having a smooth, flat

surface, and **(d)** both ends of the handle extending parallel to the external wall of the pan or pot at

the points at which they meet the wall, and **(e)** an elongated metallic side handle **(f)** having a distal

hole and **(g)** being positioned on an external wall of the circular, opaque pan or pot opposite the

U-shaped handle.

| Caraway | element | ~~Defendant~~MBG |
| --- | --- | --- |



115.122.   Because Defendant'sMBG's products (including its sauté pan) include each element of Plaintiff's trade dress – and arrange each element in the same combination as in Plaintiff's trade dress – they infringe Plaintiff's trade dress.

116.123.   Additionally, because Defendant'sMBG's sauté pan includes the unique combination of elements that make up Caraway's Sauté Pan Trade Dress in further combination with a gold and white color scheme and a gold and black color scheme, Defendant'sMBG's sauté pan further infringes Caraway's White and Gold Sauté Pan Trade Dress and Black and Gold Sauté Pan Trade Dress.

Defendant'sMBG's Infringement of Plaintiff's Registrations

117.124.   Defendant'sMBG's products also infringe U.S. Registration Nos. 7,095,737, 7,095,738, 7,095,739, and 7,095,740.

118.125.   For example, Defendant'sMBG's sauté pan (as depicted above) infringes the '737 Registration.

119.126.   Defendant'sMBG's fry pan (as depicted above) infringes the '738 Registration.

120.127.   Defendant'sMBG's Dutch oven (as depicted above) infringes the '739 Registration.

121.128.  Defendant'sMBG's sauce pan (as depicted above) infringes the '740 Registration.

122.129.  As a result of Defendant'sMBG's activities related to its the Infringing Products, there is a strong likelihood of confusion, and indeed actual confusion, between Defendant and its the Infringing pProducts on the one hand, and Caraway's and its products on the other.

123.130.  Indeed, such confusion is particularly evident across social media. Below are screenshots taken from the Instagram social media platform reflecting confusion between Caraway's products and the Infringing Products:



124.131.  The similarities between Caraway's cookware products and the Infringing Products are unmistakable. In an alarming trend of referring to the Infringing Products as a cheaper version of Caraway's cookware products, an article by news outlet IN THE KNOW stated "you may notice that this set looks pretty similar to another Instagram-famous brand, Caraway. However, it costs nearly a third of the price." Exhibit O.

125.132.  As outlined above, Defendant'sMBG's infringement of Plaintiff's trade dress is

pervasive across ~~Defendant's~~MBG's products.

~~126.~~133.   For example, ~~Defendant's~~MBG's sauce pan infringes Caraway's Lid Trade Dress, White and Gold Lid Trade Dress, Black and Gold Lid Trade Dress, Lid Handle Trade Dress, White and Gold Lid Handle Trade Dress, Black and Gold Lid Handle Trade Dress, and the '740 Registration, as outlined above.

~~127.~~134.   ~~Defendant's~~MBG's sauté pan infringes Caraway's Lid Trade Dress, White and Gold Lid Trade Dress, Black and Gold Lid Trade Dress, Side/Front Handle Trade Dress, White and Gold Side/Front Handle Trade Dress, Black and Gold Side/Front Handle Trade Dress, Lid Handle Trade Dress, White and Gold Lid Handle Trade Dress, Black and Gold Lid Handle Trade Dress, Sauté Pan Trade Dress, White and Gold Sauté Pan Trade Dress, Black and Gold Sauté Pan Trade Dress, and the '737 Registration, as outlined above.

~~128.~~135.   ~~Defendant's~~MBG's Dutch oven infringes Caraway's Lid Trade Dress, White and Gold Lid Trade Dress, Black and Gold Lid Trade Dress, Side/Front Handle Trade Dress, White and Gold Side/Front Handle Trade Dress, Black and Gold Side/Front Handle Trade Dress, Lid Handle Trade Dress, White and Gold Lid Handle Trade Dress, Black and Gold Lid Handle Trade Dress, and the '739 Registration, as outlined above.

~~129.~~136.   ~~Defendant's~~MBG's fry pan infringes the '738 Registration, as outlined above.

~~130.~~137.   Caraway used its trade dress extensively and continuously before ~~Defendant~~MBG began advertising, promoting, selling, offering to sell, manufacturing, importing, or distributing the Infringing Products.

~~131.~~138.   Upon information and belief, Caraway's extensive use of its trade dress caused ~~Defendant~~MBG to identify Caraway cookware as its motivation in branding and launching.

~~132.~~139.   Moreover, Caraway's trade dress has become famous and acquired secondary

meaning in the United States in general, and New York in particular, before ~~Defendant~~MBG commenced its unlawful use. Consumers associate the above-identified trade dress with Caraway and understand that such products are made by Caraway.

~~Defendant's~~MBG's Infringement of Plaintiff's Patents

~~133.~~140.    As shown below, ~~Defendant's~~MBG's products, including its Dutch oven, sauté pan, and sauce pan, include lid handles that infringe US Patent No. D917,226 ("Cookware Lid Handle").



| '226 Patent | ~~Defendant's~~MBG's Products |
|---|---|

~~134.~~141.    As shown below, ~~Defendant's~~MBG's products, including its Dutch oven, sauté pan, and sauce pan, include lids that infringe US Patent No. D953,102 ("Cookware Lid").



| '102 Patent | ~~Defendant's~~MBG's Products |
|---|---|



135.142.   As shown below, ~~Defendant's~~MBG's products, including its Dutch oven, sauté pan, and sauce pan, include lids that infringe US Patent No. D921,421 ("Cookware Lid").



136.143.   As shown below, ~~Defendant's~~MBG's products, including its Dutch oven and

sauté pan, include handle(s) that infringe US Patent No. D918,647 ("Cookware Side Handle").

| '647 Patent | ~~Defendant's~~MBG's Products |
|---|---|
|  Fig. 1 | |

144.    Upon information and belief, MBG sells the Infringing Products to Walmart, and Walmart Purchases the Infringing Products from MBG, in an exclusive business relationship or partnership between MBG and Walmart.

145.    Walmart markets, promotes, offers for sale, and sells each of the Infringing Products, including via its website (as shown in Exhibit N) and in its retail stores (including those in this District).

146.    For example, Walmart promotes the Infringing Products to consumers through the use of dedicated sales pages which prominently feature the Infringing Products.

147.    By way of further example, Walmart promotes the Infringing Products to consumers by prominently featuring the Infringing Products in desirable areas of 1,600 or more of its retail stores, in order to increase its sales of the Infringing Products.

148.    As a result of Walmart's activities related to the Infringing Products, there is a strong likelihood of confusion, and indeed actual confusion, between the Infringing Products (as promoted and sold by Walmart) on the one hand, and Caraway's products on the other.

149.    Indeed, such confusion is reflected on Walmart's own website. Below are screenshots of product reviews provided by customers on Walmart's website in connection with the Infringing Products, reflecting confusion between Caraway's products and the Infringing Products.



**Example Reviews for the Infringing Products on Walmart's Website**

150.    Upon information and belief, Drew Barrymore uses each of the Infringing Products in her home in New York, NY.

151.    For example, a Nov. 9, 2023 'Drew Barrymore Show' video entitled "Drew Reveals Her Newly Renovated Apartment Kitchen" depicted Ms. Barrymore's personal kitchen in New York, NY, in which the Infringing Products were visible. An annotated screenshot from this video (showing the presence of the Infringing Products in Ms. Barrymore's kitchen) is shown below.



**Infringing Products in Ms. Barrymore's Home Kitchen**

152.    Ms. Barrymore also frequently promotes the Infringing Products on her personal social media accounts, thereby encouraging her tens of millions of social media followers to purchase the Infringing Products, including through links Ms. Barrymore includes in her posts which facilitate such purchases via Walmart's website.

153.    Example screenshots of posts by Ms. Barrymore on her personal Facebook page in which she promotes the Infringing Products, encourages her social media followers to purchase the Infringing Products, and provides links to Walmart's website to facilitate the purchase of the Infringing Products, are shown below.



**Social Media Posts by Drew Barrymore (Including Links to Purchase Infringing Products)**

154.    Upon information and belief, Ms. Barrymore receives a direct financial benefit as a result of the increased sales of the Infringing Products, including those purchased as a result of her social media promotion activities.

### COUNT I:
### TRADE DRESS INFRINGEMENT UNDER § 43(a) OF THE LANHAM ACT,
### 15 U.S.C. § 1125(a) (ALL DEFENDANTS)

137.155.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

138.156.   Defendant'sMBG's advertisement, promotion, manufacture, import, offering for sale, selling and distributing the Infringing Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Caraway's trade dress (as defined herein).

139.157.   Caraway's trade dress (including Caraway's Lid Trade Dress, White and Gold Lid Trade Dress, Black and Gold Lid Trade Dress, Side/Front Handle Trade Dress, White and

Gold Side/Front Handle Trade Dress, Black and Gold Side/Front Handle Trade Dress, Lid Handle Trade Dress, White and Gold Lid Handle Trade Dress, Black and Gold Lid Handle Trade Dress, Sauté Pan Trade Dress, White and Gold Sauté Pan Trade Dress, Black and Gold Sauté Pan Trade Dress, Sauté Pan Trade Dress, White and Gold Sauté Pan Trade Dress, and Black and Gold Sauté Pan Trade Dress) is entitled to protection under the Lanham Act.

140.158.   Caraway's trade dress includes unique, distinctive, and non-functional designs.

141.159.   Caraway has extensively and continuously promoted and used its trade dress in the United States.

142.160.   Through that extensive and continuous use, Caraway's trade dress has become a well-known indicator of the origin and quality of Caraway's cookware products, and has also acquired substantial secondary meaning in the marketplace.

143.161.   Caraway's trade dress is inherently distinctive in that it is arbitrary and fanciful, and is non-functional.  It also has acquired distinctiveness and has achieved secondary meaning as a source identifier for Caraway's cookware products through Caraway's extensive use.

144.162.   Caraway owns all rights in its trade dress and has never authorized any Defendant to use them.

145.163.   Defendant's MBG's use of Caraway's trade dress and/or colorable imitations thereof is likely to cause, and has caused, confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendant with Caraway and as to the origin, sponsorship and/or approval of the Infringing Products, at least by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by or otherwise associated with Caraway.

164.        Defendant's MBG's use of Caraway's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Caraway for which Caraway

has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Caraway's trade dress with Caraway and Caraway's cookware products.

165.    Walmart's advertisement, promotion, import, offering for sale, selling, and distributing the Infringing Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Caraway's trade dress (as defined herein).

146.166.    Drew Barrymore's advertisement, promotion, offering for sale, and selling, the Infringing Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Caraway's trade dress (as defined herein) and/or by contributing to or otherwise furthering infringement by MBG and/or Walmart.

147.167.    Upon information and belief, Defendant'sMBG's use of Caraway's trade dress and colorable imitations thereof has been intentional, willful, and malicious. Defendant'sMBG's bad faith is evidenced at least by the similarity of its Infringing Products to Caraway's trade dress, as demonstrated above, and by Defendant'sMBG's continuing disregard for Caraway's rights.

148.168.    Caraway is entitled to injunctive relief, and Caraway is entitled to recover at least each Defendant's profits, Caraway's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

### COUNT II:
### TRADE DRESS INFRINGEMENT UNDER § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114 (ALL DEFENDANTS)

149.169.    Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

150.170.    Plaintiff is the owner of U.S. Registration Nos. 7,095,737, 7,095,738, 7,095,739, and 7,095,740, each of which encompasses Caraway's trade dress which is distinctive,

non-functional, and has acquired secondary meaning.

171.        ~~Defendant's~~MBG's making, marketing, using, selling, and offering for sale of the Infringing Products which embody Plaintiff's Registrations is an unauthorized use in commerce of Plaintiff's trade dress as protected by Plaintiff's Registrations.

172.        Walmart's advertisement, promotion, import, offering for sale, selling, and distributing the Infringing Products which embody Plaintiff's Registrations is an unauthorized use in commerce of Plaintiff's trade dress as protected by Plaintiff's Registrations.

~~151.~~173.    Drew Barrymore's advertisement and promotion of the Infringing Products which embody Plaintiff's Registrations is an unauthorized use in commerce of Plaintiff's trade dress as protected by Plaintiff's Registrations and/or conduct which contributes to or otherwise furthers infringement by MBG and/or Walmart.

~~152.~~174.    Each Defendant's actions as described herein are likely to cause, and have caused, confusion, mistake, or deception as to the origin and source of Plaintiff's goods and the Infringing Products, which are in direct competition with each other.

~~153.~~175.    Each Defendant's infringing acts have damaged, and will continue to damage, Plaintiff's business, reputation, and goodwill, and is likely to discourage current and potential customers, distributors, retailers, investors, and members of the public from dealing with Plaintiff. Each Defendant's conduct has caused, and unless restrained and enjoined will continue to cause, irreparable harm to Plaintiff that cannot be adequately compensated or measured by money alone. Plaintiff has no adequate remedy at law.

~~154.~~176.    Each Defendant is liable under 15 U.S.C. § 1114 for infringement of Plaintiff's Registrations.

~~155.~~177.    Plaintiff is entitled to preliminary and permanent injunctive relief enjoining

each Defendant's continued infringement of Plaintiff's Registrations and recalling all Infringing Products sold or distributed by each Defendant.

~~156.~~178.   Upon information and belief, ~~Defendant's~~MBG's infringement has been committed in bad faith, willfully and with intent.

~~157.~~179.   Pursuant to 15 U.S.C. § 1118, ~~Defendant~~ MBG and Walmart should be ordered to deliver all units of the Infringing Products to Plaintiff or Plaintiff's designee to be destroyed.

### COUNT III:
### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER § 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a) (ALL DEFENDANTS)

~~158.~~180.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

181.       ~~Defendant's~~MBG's activities as described above constitute infringement of Caraway's trade dress, false designations of origin, and unfair competition, in violation of 15 U.S.C. § 1125(a).

182.       Walmart's activities as described above constitute infringement of Caraway's trade dress, false designations of origin, and unfair competition, in violation of 15 U.S.C. § 1125(a).

~~159.~~183.   Drew Barrymore's activities as described above constitute infringement of Caraway's trade dress, false designations of origin, and unfair competition, in violation of 15 U.S.C. § 1125(a) or conduct which contributes to or otherwise furthers infringement, false designations of origin, and unfair competition by MBG and/or Walmart.

~~160.~~184.   Each Defendant's acts of false designations of origin and unfair competition have caused and, unless enjoined, will continue to cause substantial and irreparable injury to Caraway for which Caraway has no adequate remedy at law, including at least substantial and

irreparable injury to the goodwill and reputation for quality associated with Caraway's trade dress with Caraway and Caraway's cookware products.

161.185.   Upon information and belief, Defendant'sMBG's false designations of origin and unfair competition have been intentional, willful, and malicious. Defendant'sMBG's bad faith is evidenced at least by the similarity of its Infringing Products to Caraway's products, as demonstrated above, and by Defendant'sMBG's continuing disregard for Caraway's rights.

162.186.   Caraway is entitled to injunctive relief, and Caraway is entitled to recover at least each Defendant's profits, Caraway's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT IV:
## TRADE DRESS DILUTION UNDER § 43(c) OF THE LANHAM ACT, 15 U.S.C. § 1125(c) (ALL DEFENDANTS)

163.187.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

164.188.   Caraway's trade dress (including Caraway's Lid Trade Dress, White and Gold Lid Trade Dress, Black and Gold Lid Trade Dress, Side/Front Handle Trade Dress, White and Gold Side/Front Handle Trade Dress, Black and Gold Side/Front Handle Trade Dress, Lid Handle Trade Dress, White and Gold Lid Handle Trade Dress, Black and Gold Lid Handle Trade Dress, Sauté Pan Trade Dress, White and Gold Sauté Pan Trade Dress, Black and Gold Sauté Pan Trade Dress, Sauté Pan Trade Dress, White and Gold Sauté Pan Trade Dress, Black and Gold Sauté Pan Trade Dress, and U.S. Registration Nos. 7,095,737, 7,095,738, 7,095,739, and 7,095,740) is distinctive and famous and was famous prior to the acts committed by Defendant MBG discussed herein.

165.189.   Defendant'sMBG's unauthorized advertisement, promotion, display, shipment,

offering for sale, sale, and distribution of the Infringing Products in commerce is likely to impair the distinctive quality of, and harm the reputation of, Plaintiff's famous trade dress.

166.190.    Defendant'sMBG's unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Infringing Products in commerce is likely to cause dilution by blurring the exclusive association consumers have when exposed to Plaintiff's trade dress, that is, consumer identification of Plaintiff's trade dress as originating from a single source, namely Caraway.

191.    Moreover, because the Infringing Products are not subject to Caraway's quality control standards, Defendant'sMBG's unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Infringing Products is likely to cause dilution by tarnishing the reputation that Caraway has built up and enjoys in its superior-quality cookware sold under Plaintiff's trade dress.

192.    Walmart's unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Infringing Products in commerce is likely to impair the distinctive quality of, and harm the reputation of, Plaintiff's famous trade dress.

193.    Walmart's unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Infringing Products in commerce is likely to cause dilution by blurring the exclusive association consumers have when exposed to Plaintiff's trade dress, that is, consumer identification of Plaintiff's trade dress as originating from a single source, namely Caraway.

194.    Moreover, because the Infringing Products are not subject to Caraway's quality control standards, Walmart's unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Infringing Products is likely to cause dilution by tarnishing

the reputation that Caraway has built up and enjoys in its superior-quality cookware sold under Plaintiff's trade dress.

195.    Drew Barrymore's unauthorized advertisement and promotion of the Infringing Products in commerce is likely to impair the distinctive quality of, and harm the reputation of, Plaintiff's famous trade dress, or is conduct which contributes to or otherwise furthers conduct by MBG and/or Walmart which constitutes dilution.

196.    Drew Barrymore's unauthorized advertisement and promotion of the Infringing Products in commerce is likely to cause dilution by blurring the exclusive association consumers have when exposed to Plaintiff's trade dress, that is, consumer identification of Plaintiff's trade dress as originating from a single source, namely Caraway, or is conduct which contributes to or otherwise furthers conduct by MBG and/or Walmart which constitutes dilution.

167.197.    Moreover, because the Infringing Products are not subject to Caraway's quality control standards, Drew Barrymore's unauthorized advertisement and promotion of the Infringing Products is likely to cause dilution by tarnishing the reputation that Caraway has built up and enjoys in its superior-quality cookware sold under Plaintiff's trade dress, or is conduct which contributes to or otherwise furthers conduct by MBG and/or Walmart which constitutes dilution.

168.198.    Defendant MBG has acted willfully and deliberately and has profited and been unjustly enriched by sales they would not otherwise have made but for their its unlawful conduct.

169.199.    Each Defendant has caused Caraway to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, Caraway's lost profits.

170.200.    Each Defendant's acts are causing and continue to cause Caraway irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to Caraway will continue, without any adequate remedy at law, unless and

until each Defendant's unlawful conduct is enjoined by this Court.

~~171.~~201.   Caraway has been and will continue to be harmed by each Defendant's conduct in an amount to be determined at trial.

## COUNT V:
## COMMON LAW TRADE DRESS INFRINGEMENT (ALL DEFENDANTS)

~~172.~~202.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

203.     ~~Defendant's~~MBG's advertisement, promotion, manufacture, import, offering for sale, selling and distributing the Infringing Products in direct competition with Caraway constitutes common law trade dress infringement, at least because of ~~Defendant's~~MBG's use of Caraway's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association ~~of Defendant's with Caraway and~~ as to the origin, sponsorship and/or approval of ~~Defendant's~~ the Infringing Products, at least by creating the false and misleading impression that ~~its~~the Infringing Products are manufactured by, authorized by or otherwise associated with Caraway.

204.     Walmart's advertisement, promotion, import, offering for sale, selling and distributing the Infringing Products in direct competition with Caraway constitutes common law trade dress infringement, at least because of Walmart's use of Caraway's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association as to the origin, sponsorship and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by or otherwise associated with Caraway.

~~173.~~205.   Drew Barrymore's advertisement and promotion of the Infringing Products in direct competition with Caraway constitutes common law trade dress infringement, at least

47

because of Ms. Barrymore's use of Caraway's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association as to the origin, sponsorship and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by or otherwise associated with Caraway, or is conduct which contributes to or otherwise furthers infringement by MBG and/or Walmart.

174.206.   Caraway's trade dress is entitled to protection under the common law. Caraway's trade dress includes unique, distinctive, and non-functional designs. Caraway has extensively and continuously promoted and used its trade dress in the United States. Through that extensive and continuous use, Caraway's trade dress has become a well-known indicator of the origin and quality of Caraway's cookware products, and has also acquired substantial secondary meaning in the marketplace.

175.207.   Each Defendant's use of Caraway's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Caraway for which Caraway has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Caraway's trade dress with Caraway and Caraway's cookware products.

176.208.   Upon information and belief, Defendant'sMBG's use of Caraway's trade dress and colorable imitations thereof has been intentional, willful, and malicious. Defendant'sMBG's bad faith is evidenced at least by the similarity of its Infringing Products to Caraway's, as demonstrated above, and by Defendant'sMBG's continuing disregard for Caraway's rights.

177.209.   Caraway is entitled to injunctive relief, and Caraway is entitled to recover at least each Defendant's profits, Caraway's actual damages, enhanced damages, costs, and

reasonable attorney fees.

**COUNT VI:**
**COMMON LAW UNFAIR COMPETITION (ALL DEFENDANTS)**

~~178.~~210.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

211.        ~~Defendant's~~MBG's advertisement, promotion, manufacture, import, offering for sale, selling and distributing the Infringing Products in direct competition with Caraway constitutes common law unfair competition, at least because of ~~Defendant's~~MBG's use of Caraway's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association ~~of Defendant's with Caraway and~~ as to the origin, sponsorship and/or approval of ~~Defendant's~~ the Infringing Products, at least by creating the false and misleading impression that ~~its~~the Infringing Products are manufactured by, authorized by or otherwise associated with Caraway.

212.        Walmart's advertisement, promotion, import, offering for sale, selling and distributing the Infringing Products in direct competition with Caraway constitutes common law unfair competition, at least because of Walmart's use of Caraway's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association as to the origin, sponsorship and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by or otherwise associated with Caraway.

~~179.~~213.   Drew Barrymore's advertisement and promotion of the Infringing Products in direct competition with Caraway constitutes common law unfair competition, at least because of Ms. Barrymore's use of Caraway's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association as to the

origin, sponsorship and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by or otherwise associated with Caraway, or is conduct which contributes to or otherwise furthers unfair competition by MBG and/or Walmart.

180.214.   Caraway's trade dress is entitled to protection under the common law. Caraway's trade dress includes unique, distinctive, and non-functional designs. Caraway has extensively and continuously promoted and used its trade dress in the United States. Through that extensive and continuous use, Caraway's trade dress has become a well-known indicator of the origin and quality of Caraway's cookware products, and has also acquired substantial secondary meaning in the marketplace.

181.215.   Each Defendant's use of Caraway's trade dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Caraway for which Caraway has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Caraway's trade dress with Caraway and Caraway's cookware products.

182.216.   Upon information and belief, Defendant'sMBG's use of Caraway's trade dress and colorable imitations thereof has been intentional, willful, and malicious. Defendant'sMBG's bad faith is evidenced at least by the similarity of its Infringing Products to Caraway's, as demonstrated above, and by Defendant'sMBG's continuing disregard for Caraway's rights.

183.217.   Caraway is entitled to injunctive relief, and Caraway is entitled to recover at least each Defendant's profits, Caraway's actual damages, enhanced damages, costs, and reasonable attorney fees.

## ~~COUNT VII:~~
## ~~DECEPTIVE PRACTICES AND FALSE ADVERTISING~~
## ~~UNDER NEW YORK GEN. BUS. LAW § 133~~

~~184.     Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.~~

~~185.     Defendant's acts constitute deceptive and misleading acts and practices which violate New York General Business Law § 133.~~

~~186.     Defendant's advertisement, promotion, manufacture, import, offering for sale, selling and distributing the Infringing Products in direct competition with Caraway constitutes activity likely to cause confusion, mistake and deception for and to consumers as to the source of Caraway's products, such that consumers may believe Defendant's cookware products are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Caraway.~~

~~187.     Defendant has acted willfully and deliberately and has profited and been unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.~~

~~188.     Defendant has, by virtue of the foregoing, caused Caraway to suffer injuries for which, unless enjoined, Caraway will continue to suffer substantial and irreparable injury for which Caraway has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Caraway's trade dress with Caraway and Caraway's cookware products.~~

~~189.     Upon information and belief, Defendant's actions have been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of its Infringing Products to Caraway's, as demonstrated above, and by Defendant's continuing disregard for Caraway's rights.~~

190.      Caraway is entitled to injunctive relief, and Caraway is entitled to recover at least Defendant's profits, Caraway's actual damages, enhanced damages, costs, and reasonable attorney fees.

**COUNT VIII:**
**TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION**
**UNDER NEW YORK GEN. BUS. LAW § 360-L (ALL DEFENDANTS)**

191.218.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

192.219.   Each Defendant's acts constitute trademark dilution and injury to business reputation, in violation of New York General Business Law § 360-L.

193.220.   Caraway's trade dress is distinctive and famous within the meaning of New York General Business Law § 360-L, and was famous prior to the acts committed by each Defendant discussed herein.

221.      Defendant's MBG's use of the trade dress has diluted, or is likely to dilute, and unless enjoined will continue to dilute, the distinctive quality of the trade dress by destroying the exclusive association between the trade dress and Caraway's cookware, or otherwise lessening the capacity of the trade dress to exclusively identify Caraway and its cookware, and otherwise injure the business reputation of Caraway.

222.      Walmart's use of the trade dress has diluted, or is likely to dilute, and unless enjoined will continue to dilute, the distinctive quality of the trade dress by destroying the exclusive association between the trade dress and Caraway's cookware, or otherwise lessening the capacity of the trade dress to exclusively identify Caraway and its cookware, and otherwise injure the business reputation of Caraway.

194.223.   Drew Barrymore's use of the trade dress has diluted, or is likely to dilute, and

unless enjoined will continue to dilute, the distinctive quality of the trade dress by destroying the exclusive association between the trade dress and Caraway's cookware, or otherwise lessening the capacity of the trade dress to exclusively identify Caraway and its cookware, and otherwise injure the business reputation of Caraway, or is conduct which contributes to or otherwise furthers dilution committed by MBG and/or Walmart.

195.224.   Upon information and belief, Defendant MBG has acted willfully and deliberately and has profited and been unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

196.225.   Each Defendant has caused Caraway to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, Caraway's lost profits.

197.226.   Each Defendant's acts are causing and continue to cause Caraway irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to Caraway will continue, without any adequate remedy at law, unless and until each Defendant's unlawful conduct is enjoined by this Court.

198.227.   Caraway has been and will continue to be harmed by each Defendant's conduct in an amount to be determined at trial.

**COUNT IXVIII:**
**INFRINGEMENT OF US PATENT NO. D917,226**
**UNDER 35 U.S.C. § 271 (ALL DEFENDANTS)**

199.228.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

200.229.   United States Patent No. D917,226 (the "'226 Patent"), entitled "Cookware Lid Handle," was filed as Serial No. 29/709,070 on October 11, 2019, and named Jordan Nathan, Benjamin Gross, Kenneth Young and Bret Recor as inventors. Attached as Exhibit P is a true and correct copy of the '226 Patent.

201.230.   The '226 Patent is directed to "the ornamental design for a cookware lid handle."

202.231.   Plaintiff is the assignee of all right, title, and interest in and to the '226 Patent.

203.232.   The '226 Patent issued on April 27, 2021.

233.        Defendant MBG infringes the '226 Patent at least through their its sale, offer for sale, importation, manufacture, design, use, promotion, and marketing of the Infringing Products.

204.234.   Walmart infringes the '226 Patent at least through its sale, offer for sale, importation, promotion, and marketing of the Infringing Products.

235.        Defendant MBG and Walmart offers for sale Infringing Products incorporating or including a handle that, to the ordinary observer, is substantially the same as that encompassed by the '226 Patent.

205.236.   Drew Barrymore infringes the '226 Patent at least through her use, promotion, marketing, and/or offering for sale of the Infringing Products.

206.237.   Upon information and belief, Defendant MBG possesses knowledge of the '226 Patent.

207.238.   Upon information and belief, Defendant's MBG's infringement of the '226 Patent is willful, with wanton disregard of the protection afforded under the patent laws.

208.239.   Defendant's MBG's continued marketing, sales, manufacturing, and offering for sale of the Infringing Products constitutes willful infringement.

209.240.   Caraway is entitled to injunctive relief, and Caraway is entitled to recover at least each Defendant's profits, Caraway's actual damages, enhanced damages, costs, and

reasonable attorney fees.

<b>COUNT IX:</b><br>
<b>INFRINGEMENT OF US PATENT NO. D953,102</b><br>
<b>UNDER 35 U.S.C. §§ 271 AND 289 (ALL DEFENDANTS)</b>

210.241.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

211.242.   United States Patent No. D953,102 (the "'102 Patent"), entitled "Cookware Lid," was filed as Serial No. 29/780,165 on April 22, 2021, and named Jordan Nathan, Benjamin Gross, Kenneth Young and Bret Recor as inventors. Attached as <u>Exhibit Q</u> is a true and correct copy of the '102 Patent.

212.243.   The '102 Patent is directed to "the ornamental design for a cookware lid."

213.244.   Plaintiff is the assignee of all right, title, and interest in and to the '102 Patent.

214.245.   The '102 Patent issued on May 31, 2022.

246.          Defendant MBG infringes the '102 Patent at least through their its offer for sale, sale, importation, manufacture, design, use, promotion, and marketing of the Infringing Products.

215.247.   Walmart infringes the '102 Patent at least through its offer for sale, sale, importation, promotion, and marketing of the Infringing Products.

248.          Defendant MBG and Walmart offers for sale Infringing Products incorporating or including a lid that, to the ordinary observer, is substantially the same as that encompassed by the '102 Patent.

216.249.   Drew Barrymore infringes the '102 Patent at least through her use, promotion, marketing, and/or offering for sale of the Infringing Products.

250.          Upon information and belief, Defendant MBG possesses knowledge of the

*'102 Patent.

217.251.   Upon information and belief, Defendant'sMBG's infringement of the *'102 Patent is willful, with wanton disregard of the protection afforded under the patent laws.

218.252.   Defendant'sMBG's continued marketing, sales, manufacturing and offering for sale of the Infringing Products constitutes willful infringement.

219.253.   Caraway is entitled to injunctive relief, and Caraway is entitled to recover at least each Defendant's profits, Caraway's actual damages, enhanced damages, costs, and reasonable attorney fees.

**COUNT XI:**
**INFRINGEMENT OF US PATENT NO. D921,421**
**UNDER 35 U.S.C. § 271 (ALL DEFENDANTS)**

220.254.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

221.255.   United States Patent No. D921,421 (the "'421 Patent"), entitled "Cookware Lid," was filed as Serial No. 29/709,068 on October 11, 2019, and named Jordan Nathan, Benjamin Gross, Kenneth Young and Bret Recor as inventors. Attached as Exhibit R is a true and correct copy of the '421 Patent.

222.256.   The '421 Patent is directed to "the ornamental design for [a] cookware lid."

223.257.   Plaintiff is the assignee of all right, title, and interest in and to the '421 Patent.

224.258.   The '421 Patent issued on June 8, 2021.

259.       Defendant MBG infringes the '421 Patent at least through their its offer for sale, sale, importation, manufacture, design, use, promotion, and marketing of the Infringing Products.

225.260.   Walmart infringes the '421 Patent at least through its offer for sale, importation,

promotion, and marketing of the Infringing Products.

261.        ~~Defendant~~ MBG and Walmart offer~~s~~ for sale Infringing Products incorporating or including a lid that, to the ordinary observer, is substantially the same as that encompassed by the '421 Patent.

~~226.~~262.   Drew Barrymore infringes the '421 Patent at least through her use, promotion, marketing, and/or offer for sale of the Infringing Products.

~~227.~~263.   Upon information and belief, ~~Defendant~~ MBG possesses knowledge of the '421 Patent.

~~228.~~264.   Upon information and belief, ~~Defendant's~~MBG's infringement of the '421 Patent is willful, with wanton disregard of the protection afforded under the patent laws.

~~229.~~265.   ~~Defendant's~~MBG's continued marketing, sales, manufacturing and offering for sale of the Infringing Products constitutes willful infringement.

~~230.~~266.   Caraway is entitled to injunctive relief, and Caraway is entitled to recover at least each Defendant's profits, Caraway's actual damages, enhanced damages, costs, and reasonable attorney fees.

### COUNT XI~~I~~:
### INFRINGEMENT OF US PATENT NO. D918,647
### UNDER 35 U.S.C. § 271 (ALL DEFENDANTS)

~~231.~~267.   Plaintiff re-alleges and incorporates the allegations in each of the paragraphs in this Complaint as if fully set forth herein.

~~232.~~268.   United States Design Patent No. D918,647 (the "'647 Patent"), entitled "Cookware Side Handle," was filed as Serial No. 29/790,082 on October 11, 2019, and named Jordan Nathan, Benjamin Gross, Kenneth Young and Bret Recor as inventors. Attached as Exhibit

S is a true and correct copy of the '647 Patent.

~~233.~~269.   The '647 Patent is directed to "the ornamental design for a cookware side handle."

~~234.~~270.   Plaintiff is the assignee of all right, title, and interest in and to the '647 Patent.

~~235.~~271.   The '647 Patent issued on May 11, 2021.

~~236.~~272.   ~~Defendant~~MBG infringes the '647 Patent at least through ~~their~~ its offer for sale, sale, importation, manufacture, design, use, promotion, and marketing of the Infringing Products.

273.     Walmart infringes the '647 Patent at least through its offer for sale, sale, importation, promotion, and marketing of the Infringing Products.

274.     ~~Defendant~~ MBG and Walmart offer~~s~~ for sale the Infringing Products incorporating or including a handle that, to the ordinary observer, is substantially the same as that encompassed by the '647 Patent.

~~237.~~275.   Drew Barrymore infringes the '647 Patent at least through her use, promotion, marketing, and/or offer for sale of the Infringing Products.

~~238.~~276.   Upon information and belief, ~~Defendant~~ MBG possesses knowledge of the '647 Patent.

~~239.~~277.   Upon information and belief, ~~Defendant's~~MBG's infringement of the '647 Patent is willful, with wanton disregard of the protection afforded under the patent laws.

~~240.~~278.   ~~Defendant's~~MBG's continued marketing, sales, manufacturing and offering for sale of the Infringing Products constitutes willful infringement.

~~241.~~279.   Caraway is entitled to injunctive relief, and Caraway is entitled to recover at

least each Defendant's profits, Caraway's actual damages, enhanced damages, costs, and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Caraway respectfully requests that the Court:

A. Grant judgment in favor of Caraway and against each Defendant on all of Caraway's claims;

B. Preliminarily and permanently enjoin and restrain each Defendant, its officers, agents, subsidiaries, servants, partners, employees, attorneys, investors, consultants and all others in active concert or participation with them, from:

a. Making any use of the trade dress, or any designation of origin confusingly similar thereto, including offering to sell, selling, distributing, or importing into the U.S. cookware incorporating the trade dress;

b. Infringing or diluting any of the trade dress;

c. Infringing any Caraway patents;

d. Unfairly competing with Caraway in the manufacture, importation, advertising, offering for sale, sale, shipment and/or distribution of cookware;

e. Disposing of, destroying, moving, secreting, relocating and/or transferring any and all of any Defendant's stock of the Infringing Products or cookware incorporating the trade dress, without court direction;

f. Disposing of, destroying, moving, secreting, relocating and/or transferring any information, records, and/or documents in any Defendant's possession pertaining to their purchase, importation, receipt, advertising, offering for sale, sale, shipment and/or distribution of cookware incorporating the trade dress; and,

g.    Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the aforementioned activities.

C.    Order each Defendant to, at ~~Defendant's~~ its expense, withdraw from the market, account for and properly destroy any and all products bearing the trade dress;

D.    Order each Defendant, pursuant to 15 U.S.C. § 1116, to serve on Caraway within thirty (30) days after service on Defendant of preliminary or permanent injunctive orders, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction.

E.    Finding that each Defendant~~'s~~' acts complained of above render this case "exceptional" within the meaning of 15 U.S.C. § 1117 and/or 35 U.S.C. § 285.

F.    Order each Defendant to account for, and pay over to Caraway, that Defendant's profits (including, under 35 U.S.C. § 289, ~~Defendant's~~ its total profit for infringement of Caraway's patented designs) and all damages sustained by Caraway;

G.    Increase the amount of damages and/or profits awarded to Caraway, as provided by law;

H.    Award Caraway such treble and punitive damages for ~~Defendant's~~MBG's willful and intentional acts of unfair competition, design patent infringement, and infringement of Caraway's rights that the Court shall deem just and proper;

I.    Award Caraway the fees, costs and disbursements, and interest, expended in connection with any actions taken to investigate and confirm the claims made herein;

J.    Award Caraway its reasonable attorneys' fees, costs, disbursements, and interest, as provided by law; and

K.    Grant such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment, Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: ~~January 17, 2024~~March 8, 2024    Bochner PLLC

               By: _/s/ Ariel Reinitz_
               Andrew D. Bochner
               Ariel Reinitz
               Bochner PLLC
               1040 Avenue of the Americas
               15th Floor
               New York, New York 10018
               P: (646) 971-0685
               andrew@bochner.law
               ariel@bochner.law

               _Attorneys for Plaintiff Caraway Home, Inc._